UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

FURLONG FUND LLC on behalf of itself
and all others similarly situated,

                    Plaintiff,

-against-

VBI VACCINES, INC. formerly known as
Paulson Capital (Delaware) Corp. formerly
known as Paulson Capital Corp., CHESTER
L.F. PAULSON, CHARLES L.F. PAULSON,
PAUL F. SHOEN, DR. SHANNON PRATT,
and TRENT DAVIS,

                      Defendants.

------------------------------------------------------------------

14-Cv-9435 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    This securities class action seeks to recover alleged losses from a liquidating trust established by Paulson Capital Corp. ("PCC"), now known as VBI Vaccines, Inc. ("VBI").  Plaintiff Furlong Fund LLC asserts, on behalf of itself and similarly situated PCC shareholders who held beneficial interests in the trust, that PCC and its directors – individual defendants Chester L.F. Paulson, Charles L.F. Paulson, Paul F. Shoen, and Dr. Shannon Pratt – solicited shareholder approval for the trust by negligently misrepresenting and omitting information regarding the value of the trust in an October 18, 2013 proxy statement, in violation of Section 14(a), Rule 14a-9, and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  15 U.S.C. §§ 78n, 78t; 17 C.F.R. § 240.14a-9.

    After this action was filed in November 2014, VBI moved to dismiss the complaint on the grounds, *inter alia*, that Furlong had failed to allege that VBI had acted negligently with the requisite particularity.  Furlong then filed an amended complaint in February 2015.  The next month, after the Court appointed lead counsel, Furlong filed a Second Amended Complaint, alleging essentially the same violations of law.

VBI and the individual defendants have now moved to dismiss all claims against them with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  Because plaintiff has failed to plead any false or misleading statement or omission with the particularity required by the PSLRA and case law, the Court grants defendants' motions and dismisses the Second Amended Complaint with prejudice.

## I. BACKGROUND

According to the complaint, PCC was a publicly traded financial services holding company that operated through its sole subsidiary, a boutique investment bank and brokerage firm called Paulson Investment Company ("PIC").  (Second Amended Complaint ("SAC") ¶¶ 3, 33.)  On October 18, 2013, PCC filed a proxy statement soliciting votes from its shareholders to approve a series of proposals, including Proposal 6, which involved the formation of a liquidating trust in connection with a proposed restructuring transaction.  (SAC ¶ 5; Proxy Statement at 21–26, Ex. E to Decl. of David B. Gordon dated May 8, 2015).  Proceeds from the liquidation of the trust's assets would be distributed as dividends to shareholders of PCC stock as of the record date, October 11, 2013 ("Legacy Shareholders"), including Furlong.  (SAC ¶¶ 6–7.)  At the time, PCC's officers and directors allegedly controlled 33.5% of PCC's outstanding common stock and therefore the approval of the Legacy Shareholders was required in order for PCC to establish the trust and effectuate the restructuring.  (SAC ¶¶ 6, 39–40.)  On November 8, 2013 a majority of PCC shareholders in fact voted in favor of Proposal 6, allegedly because of representations in the Proxy Statement that Furlong claims were both misleading and material.  (SAC ¶¶ 8, 42, 60.)

On July 27, 2014, PCC announced that its merger with VBI had closed.  (SAC ¶ 49.)  At the time of the merger, defendants allegedly created the trust with assets "valued at approximately $9.8 million."  (SAC ¶¶ 13, 50.)  Plaintiff claims that the Proxy Statement contained three specific "material misleading statements" that "coerced" the Legacy Shareholders to approve the restructuring: namely, that the Proxy Statement (1) "misrepresent[ed] the fact that 25% of PIC would be contributed to the

Liquidating Trust"; (2) "misrepresent[ed] the fact that the Trust Assets would be irrevocably placed in trust"; and (3) "fail[ed] to disclose that [PCC] was going to delay the creation of the Trust until almost one (1) year later." (SAC ¶¶ 15, 55). The 25% interest in PIC allegedly "appears to have vanished" from the trust. (SAC ¶¶ 16, 51.) Assets that were represented to be "irrevocably placed in Trust" were purportedly used instead to indemnify PCC's merger partner, VBI, (SAC ¶¶ 16, 48), and defendants' purported delay in forming the trust significantly reduced, allegedly, the amount of cash contributed to the trust (SAC ¶¶ 14, 51).

The complaint also alleges that on November 21, 2013 – a day after NASDAQ halted all trading in PCC stock – PCC received a letter from NASDAQ stating that PCC failed to notify NASDAQ of the proposed trust distributions ten days prior to the October 11, 2013 record date in violation of NASDAQ Listing Rule 5250(e)(6). (SAC ¶ 43.) After receiving the letter, the Board allegedly failed to act and continued to violate the NASDAQ listing rules. (SAC ¶ 12.) On February 19, 2014, NASDAQ distributed a public reprimand letter to PCC stating that PCC "ha[d] been remiss in failing to provide timely notifications in accordance with NASDAQ Listing Rule 5250(e)(6) and SEC Rule 10b-17, to ensure clear and complete disclosure with respect to shareholder rights to the Paulson Liquidating Trust and non-trust assets, and regarding plans for [PIC]." (SAC ¶¶ 12, 45.)

Furlong claims, on behalf of itself and a proposed class of shareholders holding PCC stock as of October 11, 2013, that defendants violated Section 14(a) and SEC Rule 14a-9 by soliciting votes from Furlong and other class members through a proxy statement containing negligently misleading misrepresentations and omissions of material fact. (SAC ¶¶ 31, 58.) The complaint further alleges that the individual defendants are liable for violating Section 14(a) as control persons pursuant to Section 20(a) of the Exchange Act. (SAC ¶¶ 67, 70.) In March 2015, the Court granted Furlong's unopposed motion to be the lead plaintiff to represent the interests of the putative class. The Court also appointed Andrews &

3

Springer LLC as lead counsel for the class.  The individual defendants[1] and VBI itself have now both moved to dismiss the Second Amended Complaint for failing to state claims upon which relief can be granted.

## II.   DISCUSSION

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of V. I. v. Blanford*, 794 F.3d 297, 304 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At this stage, "we accept only [the complaint's] factual allegations, and the reasonable inferences that can be drawn therefrom, as true." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Nevertheless, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  If the complaint's allegations "conflict with the plain language of the publicly filed disclosure documents, the disclosure documents control, and the court need not accept the allegations as true." *Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F. Supp. 2d 639, 646–47 (S.D.N.Y. 2001); *see also Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 153 (2d Cir. 2013) (finding no actionable misstatement given language in disclosure document).  "But the court may not choose among plausible interpretations of the disclosure documents—if a trier of fact could agree with plaintiff['s] interpretation of the relevant language, the motion to dismiss must be denied." *Sedighim*, 167 F. Supp. 2d at 647.

The SAC contains two claims for relief: (1) a Section 14(a) claim against all defendants for soliciting proxies from the members of the putative class by means of a proxy statement that "through Defendants' negligence contained statements which, at the time and in light of the

---

[1]   In June 2015, the parties stipulated to the dismissal of Trent Davis as an individual defendant.

4

circumstances under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading" (SAC ¶ 58) and (2) a Section 20(a) claim against the individual defendants on the grounds that they are liable under Section 20(a) because they had the ability to control those who violated Section 14(a) (SAC ¶¶ 67–71).  The Court turns to each claim in turn.

### B.   Section 14(a) Claim

Section 14(a) of the Exchange Act states that "[i]t shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security."  15 U.S.C. § 78n(a)(1).  Rule 14a-9 prohibits any solicitation "made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).

To state a claim under Section 14(a) and Rule 14a-9, plaintiffs must show that "(1) the proxy statement contained a material misstatement or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (citing *Bond Opportunity Fund v. Unilab Corp.*, No. 99-cv-11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003), *aff'd*, 87 F. App'x 772 (2d Cir. 2004)).  The complaint must also allege "that defendants acted at least with negligence in making the misrepresentation or omission."  *In re JP Morgan Chase*, 363 F. Supp. 2d at 636.

The PSLRA plainly states that in any private action based on the Exchange Act in which the plaintiff alleges a materially misleading statement or omission – as is the case here – the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement

or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA's pleading requirements as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence, such as those here. *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 286 (S.D.N.Y. 2010); *In re JP Morgan Chase*, 363 F. Supp. 2d at 636; *Bond Opportunity*, 2003 WL 21058251, at *5. Even where a Section 14(a) claim sounds in negligence, plaintiffs "would still have had to plead facts indicating why the alleged misrepresentations were misleading." *In re JP Morgan Chase*, 363 F. Supp. 2d at 636; *see* 15 U.S.C. § 78u-4(b)(1).

When tested against the PSLRA pleading requirements, the Second Amended Complaint fails to plead properly any misleading statements or omissions. The "central issue is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the securities." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (alterations and quotations omitted). Plaintiff's alleged misrepresentations "taken together and in [the] context" of the Proxy Statement would not have misled a reasonable investor. *Id.*

### 1. *Furlong has failed to plead any misrepresentation that "25% of PIC would be contributed to the Liquidating Trust"*

Furlong alleges that defendants made misrepresentations that a 25% interest in PIC would be contributed to the trust. Plaintiff fails to identify any such statement for the simple reason that the Proxy Statement contained no such affirmative representation. The covering letter to the Proxy Statement stated that "[t]he trust will hold the majority of the assets currently held by [PIC], primarily consisting of underwriter warrants, trading and investment securities, and cash and accounts receivables." (SAC ¶ 35; Covering Letter to Proxy Statement, Ex. E to Gordon Decl.) The Proxy Statement represented that,

> [a]s part of the restructuring, it is contemplated that the broker-dealer operations will be initially owned 25% by [PCC] and 75% by

> management of PIC and outside investors, the 25% retained interest is expected to be sold and the proceeds added to the Trust. The Financing is intended to be the first step in a process of redirecting [PCC]'s focus to a business model that [PCC] believes will generate better returns for shareholders.

(SAC ¶ 36; Proxy Statement at 25, Ex. E to Gordon Decl.)  Contrary to plaintiff's allegation (see SAC ¶ 41), a reasonable investor could not plausibly consider the "contempl[ation]" and "expect[ation]" set forth in the Proxy Statement as a guarantee that the 25% interest in PIC would be added to the trust.

In the analogous Section 10(b) and Rule 10b-5 context, "[s]tatements regarding projections of future performance may be actionable . . . if they are worded as guarantees or are supported by specific statements of fact . . . or if the speaker does not genuinely or reasonably believe them." *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (citing *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993)).  By contrast, statements expressing optimism about future events – including merger completions – have been found to lack the factual support necessary to render the statements guarantees.  *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 565–66 (S.D.N.Y. 2011) ("[W]e are still planning and we continue to plan for a launch also in the U.S. in the second half of 2006."); *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 388, 397–98 (S.D.N.Y. 2001) (merger "expected to . . . close by mid–2001").  PCC's statement that it "contemplated . . .  initially own[ing] 25% of PIC" and "expected" to contribute that interest to the trust cannot plausibly be interpreted as a guarantee and lacks the necessary supporting statements of fact.

Even if the Proxy Statement had affirmatively represented that the trust was to receive a 25% interest in PIC, the complaint fails to allege facts supporting plaintiff's position that the representation was false or misleading at the time it was made.  The Proxy Statement disclosed that "[t]he Trust Assets will vary substantially, depending on factors such as economic and market conditions." (Proxy Statement at 25, Ex. E to Gordon Decl.).  There are no allegations that defendants did not intend to place the 25% interest in PIC in the trust at the time of the Proxy Statement.   In addition, a claim by plaintiff that the 25% interest in PIC

was "completely extinguished" (SAC ¶ 51) and never received by the trust is not supported by any fact and implausible because the complaint incorporates a trust document listing as part of the trust's initial assets an "Investment in PIC" of $500,000.  (*Compare* SAC ¶ 16 ("The 25% interest in PIC . . . appears to have vanished"), ¶ 51 (the "25% interest in PIC appears to have been completely extinguished") *with* Attach. B to Trust Agreement, Ex. C to SAC (listing 500,000 investment in the trust from PIC)).

### 2. *Furlong has failed to plead any misrepresentation that "the Trust Assets would be irrevocably placed in trust"*

The complaint falls short of pleading any misrepresentation that certain assets would be irrevocably placed in trust.  The Proxy Statement stated

> [b]ecause the Trust Assets were irrevocably placed in trust at a time when [PCC] could have distributed them as dividends to the Legacy Shareholders under state law, we believe . . . that the ultimate distribution of the sale proceeds to the Legacy Shareholders should not be restricted if [PCC] would not be permitted to pay a dividend at that time due to state law limitations.

(Proxy Statement at 26, Ex. E to Gordon Decl.; SAC ¶¶ 5, 37.)  When read in complete isolation, the phrase "were irrevocably placed in trust" might, as plaintiff alleges here, lead a Legacy Shareholder to infer that certain trust assets had already been "irrevocably" set aside on October 18, 2013, the date of the Proxy Statement, for eventual contribution to the trust.  (See SAC ¶ 16.)

But such a conclusion would be implausible when reading the Proxy Statement as a whole.  The statement was contained in a paragraph concerning state law issues ending a section that began: ". . . our Board of Directors has approved a plan whereby prior to the release of the escrow, an irrevocable liquidating trust (the "Trust") will be created and the [Legacy Shareholders] will be given non-transferable beneficial interests in the Trust . . . ." (Proxy Statement at 25, Ex. E to Gordon Decl.; SAC ¶ 36.) The Proxy Statement repeatedly referred to the *future* creation of the proposed trust, using verbs in the future tense and phrases such as "[o]nce

8

the Trust Assets are transferred to the Trust," (Proxy Statement at 25, Ex. E to Gordon Decl.).  In addition, the covering letter to the Proxy Statement states clearly that "a liquidating trust *will* be created."  (Covering Letter to Proxy Statement, Ex. E to Gordon Decl., emphasis added.)  As noted above, the "Trust Assets" were disclosed to be "the majority of [PIC's] assets (or the proceeds derived therefrom), currently consisting primarily of underwriter warrants, trading and investment securities, an insurance policy on the life of the founder of [PCC], and cash and accounts receivables." (Proxy Statement at 25, Ex. E to Gordon Decl.)  At most, the Proxy Statement represented that an inchoate majority of PIC's assets would be placed in the trust (SAC ¶ 35), and, even as alleged by the complaint, the trust received exactly that (SAC ¶ 50).  No reasonable shareholder could have plausibly inferred from the Proxy Statement that specific assets had already been irrevocably designated to constitute the "majority of [PIC's] assets" prior to the formation of the trust.

The allegation that Legacy Shareholders were misled because assets that should have been "irrevocably placed in trust" were instead used to indemnify VBI, PCC's merger partner, is similarly implausible.  (SAC ¶¶ 16, 48.)   The Proxy Statement made a pellucid disclosure that indemnification obligations, if any, were to be paid out of indemnification coverage paid for in turn by trust assets.  It clearly disclosed that "PIC shall pay or set aside a sufficient portion of the Trust Assets or pay directly from the Liquidating Trust" to secure indemnification coverage.  (Proxy Statement at 26, Ex. E to Gordon Decl.)

> 3.  *Furlong has not pled any actionable failure "to disclose that [PCC] was going to delay the creation of the Trust until almost one (1) year later"*

The complaint also pleads, to no avail, that defendants had a duty to disclose the alleged nine-month delay in forming the trust after the shareholder vote.  An omission violates Rule 14a-9 "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading."  *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002).  Plaintiff has neglected to identify any SEC regulation

imposing a duty on defendants to disclose the alleged delay.  As important, the complaint does not identify any representation in the Proxy Statement rendered false or misleading by this omission, nor does the SAC contain any allegation that defendants planned at the time the Proxy Statement was issued to delay the formation of the trust.  NASDAQ's letters, which reprimanded PCC for violating NASDAQ listing rules and SEC Rule 10b-17, are also irrelevant to whether defendants omitted material facts in the Proxy Statement.

Furlong counters that defendants had a duty to be both accurate and complete once they spoke about contributing assets to the trust.  However, the complaint does not identify a single representation or any particularized facts that would have led a reasonable shareholder to conclude that the trust would be formed immediately.  Indeed, the Proxy Statement stated that rather than knowing exactly what PCC would do in the future, the Board of Directors had "not yet identified the specific direction [PCC] will take" and that "[t]he proposals to be voted upon, in particular Proposal 4, 5, and 6, are designed to provide [PCC] with flexibility for future corporate action, including . . . possible acquisitions of or mergers with other companies in various industries." (Proxy Statement at 25, Ex. E to Gordon Decl.)   Furlong has not cited any case law supporting the broad proposition that a proxy statement must disclose the timing of future trust formations, or that it was unreasonable for a trust proposed in connection with a business restructuring to be formed nine months after a Proxy Statement, particularly in the absence of any allegation that, at the time of the alleged omission, defendants knew the trust's formation would not be immediate.

Having concluded that Furlong has failed to sufficiently allege the falsity or misleading nature of any statement or omission by defendants, the Court need not address defendants' additional arguments as to why the SAC fails to state a Section 14(a) claim.

### C.  Section 20(a) Claim

The complaint alleges that the individual defendants are liable for the misrepresentations in the Proxy Statement because they are control persons within the intendment of Section 20(a) of the Exchange Act.

Section 20(a) imposes joint and several liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder." 15 U.S.C. § 78t(a).

To plead a Section 20(a) claim, a plaintiff must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108. Thus, the claim against the individual defendants "is necessarily predicated on a primary violation of securities law." *Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004); *see SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996); *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994). Having failed to plead a primary violation of securities law in its Section 14(a) claim, there is no basis for control person liability, and the Second Amended Complaint therefore fails to state a Section 20(a) claim against the individual defendants.

Even had a viable claim under Rule 14a-9 been pled, plaintiff has not sufficiently pled a Section 20(a) claim. The SAC lumps the individual defendants together and states that

> [b]y virtue of their positions as officers and/or directors of PCC, and participation in and/or awareness of [PCC]'s operations and/or intimate knowledge of the false statements contained in the [Proxy Statement], they had the power to influence and control and did influence and control . . . the decision making of [PCC], including the content and dissemination of the [false and misleading] statements and omissions.

(SAC ¶ 67.)

Plaintiff has utterly failed to identify the role of each individual defendant in PCC or the Proxy Statement. The simple allegation that each was an officer or director of PCC is an insufficient allegation of control or of culpable participation in the alleged Section 14(a) violation. *See First Jersey*, 101 F.3d at 1472–73; *Bond Opportunity*, 2003 WL 21058251, at *11; *In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475, 2002 WL 244597, at *6–7 (S.D.N.Y. Feb. 20, 2002).

## III. CONCLUSION

Defendants' motions to dismiss the Second Amended Complaint are granted with prejudice on the grounds that that complaint fails to adequately plead any actionable misleading statement or omission.

Dated: New York, New York
March 25, 2016

SO ORDERED:

Sidney H. Stein, U.S.D.J.